IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIC ANTHONY DEBEVITS     )
                          )
    Plaintiff,             )
                          )
  -vs-                    )            Civil Action 20-600
                          )
ANDREW M. SAUL,           )
                          )
    Commissioner of Social Security  )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Synopsis

Plaintiff Eric Anthony Debevits ("Debevits") brought this action for review of the final decision of the Commissioner of Social Security denying his claim for disability insurance benefits ("DIB"). Debevits contends that he became disabled on May 9, 2017. (R. 10). He was represented by counsel at a hearing before an Administrative Law Judge ("ALJ") in September 2018. (R. 10). During the hearing both Debevits and a vocational expert ("VE") testified. (R. 10) Ultimately, the ALJ denied benefits. Debevits subsequently filed a Request for Review with the Appeals Council. The Appeals Council denied the request and Debevits then filed this appeal. The parties have filed Cross-Motions for Summary Judgment. See ECF Docket Nos. 13 and 15.

### Opinion

1. Standard of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court

1

to review the transcripts and records on which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson,* 402 U.S. at 390, 91 S. Ct. 1420.

A district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.,* 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses,

and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

    2. The ALJ's Decision

At step one, the ALJ determined that Debevits had not engaged in substantial gainful activity since the alleged onset date. (R. 12). At step two, the ALJ found that Debevits suffered from the following severe impairments: spine disorders, disorders of the muscles, ligaments, and fascia; carpal tunnel syndrome; hypertension; asthma; and dysfunction of the major joints. (R. 12-13). The ALJ specifically found that Debevits' Dupuytren's contracture did not constitute a severe impairment because the record was devoid of any mention of associated functional limitations. (R. 13). Turning to the third step, the ALJ concluded that those impairments, considered singly or in combination, did not meet or medically equal the severity of a listed impairment. (R. 13-14). The ALJ then found that Debevits had the residual functional capacity ("RFC") to perform light work with certain restrictions. (R. 14-21). At the fourth step the ALJ concluded that Debevits was unable to perform any of his past relevant work. (R. 21-22). Ultimately, at the fifth step of the analysis, the ALJ determined that Debevits was capable of performing work in jobs existing in significant numbers in the national economy. (R. 22-23). Consequently, the ALJ denied benefits.

    3. Discussion

(A) Dupuytren's Contracture

Debevits takes issue with the ALJ's failure to find that his Dupuytren's contracture constitutes a "severe impairment" at the second step of the analysis. (ECF No. 14, p. 11-12). Even accepting this position as correct for purposes of argument, such error was harmless because the ALJ found that Debevits suffered from several other impairments which did qualify as "severe." In other words, the ALJ did not end the analysis at the second step. *See Salles v. Commissioner of Social Security*, 229 Fed. Appx. 140, 145 n. 2 (3d Cir. 2007) (stating that, "[b]ecause the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."), *citing, Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). *See also, Bliss v. Astrue*, Civil No. 8-980, 2009 U.S. Dist. LEXIS 12172, 2009 WL 413757 (W.D. Pa. Feb. 18, 2009) (stating that, "as long as a claim is not denied at step two, it is not generally necessary for the ALJ to have specifically found any additional alleged impairments to be severe… . Since Plaintiff's claim was not denied at step two, it does not matter whether the ALJ correctly or incorrectly found Plaintiff's neuropathy and sleep apnea to be non-severe."). Because the ALJ found in Debevits' favor at step two, any alleged error was harmless and does not require reversal or remand.[1]

(B) Reliance on Social Security Ruling 96-3p

Debevits also criticizes the ALJ for his "erroneous" reliance on SSR 96-3p. (ECF No. 14, p. 12). The ALJ does, in fact, reference SSR 96-3p in assessing the severity of an impairment. (R. 13) As Debevits represents, SSR 96-3p has been rescinded. 83 Fed.

---

[1] I further note that Debevits did not identify any functional limitations stemming from his Dupuytren's contracture. Indeed, the physician who diagnosed Debevits did not indicate any work-related limitations. (R. 304)

4

Reg. 27816, 2018 WL 2967523 (June 4, 2018). Yet recission was premised upon a finding that the ruling was considered "unnecessarily duplicative" of SSR 16-3p. The new regulation, SSR 16-3p, became effective on March 16, 2016. 81 Fed. Reg. 14166, 2016 WL 1119029 (Mar. 16, 2016). The recission does not "substantively change the SSA's policies…." *Hernandez v. Comm'r. of Soc. Sec*., Civ. No. 17-4426, 2019 WL 351902, at * 4 n. 7 (D.N.J. Jan. 29, 2019). Consequently, I reject Debevits' argument that the ALJ's reliance on SSR 96-3p in this respect requires reversal or remand.

(C) Stand / Walk Limitation and Light Work

As stated above, the ALJ determined that Debevits could perform a range of light work, with the ability to stand and walk for only four hours in an eight hour workday. (R. 14) As Debevits points out, SSR 83-10 defines the *full* range of "light work" as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, and standing or walking, on or off, for a total of approximately 6 hours in an 8-hour workday. SSR 83-10, 1983 WL 3125, at * 6. In contrast, the lower category of "sedentary work" requires lifting no more than 10 pounds at a time and only occasional walking and standing. 20 C.F.R. 404.1567(a). Debevits reasons that the ALJ erred in concluding that he was capable of performing light work rather than sedentary work when he could not stand or walk for the required six hours in an 8-hour workday. (ECF No. 14, p. 14-15).

I disagree. Although Debevits fell short of being able to perform the full range of "light work," he exceeds the requirements for sedentary work. His RFC places him between the light and sedentary exertional levels. In such an instance, the ALJ's reliance upon a vocational expert is entirely appropriate. *See Stephens v. Colvin*, Civ.

5

No. 15-2029, 2017 WL 1170899, at * 19 (M.D. Pa. Mar. 13, 2017) and *Bryant v. Colvin*, Civ. No. 14-981, 2015 WL 1401001, at * 11 (Mar. 26, 2015). As my colleague noted, "Plaintiff misinterprets SSR 83-10 as precluding *any* light work for an individual who cannot stand or walk for 6 hours of an 8-hour work day when in fact that ruling only provides that 'the *full* range of light work requires standing or walking, off and on, for a total of approximately 6 hours out of an 8-hour work day.'" *Lackey v. Colvin*, Civ. No. 12-516, 2013 WL 1903662, at * 2 (W.D. Pa. May 7, 2013) (emphasis in original). As was the case in *Lackey*, "while it is true that [Debevits] is not able to perform the full range of light work, the ALJ did not so find. Instead, based on the medical evidence, the ALJ determined that [Debevits] can stand and / or walk up to 4 hours of an 8-hour day, and then relied upon testimony from a vocational expert indicating that there are jobs at the light exertional level which an individual who is limited to standing and / or walking 4 hours in an 8-hour workday nevertheless can perform." *Lackey*, 2023 WL 1903662, at * 2.

An ALJ is not required to rigidly apply exertional categories. Rather, "where additional limitations exist such that a claimant does not fall neatly within an exertional category, an ALJ should take those limitations into account when determining a claimant's RFC and appropriately reduce the occupational base to fit the claimant's individual characteristics at step five of the process." See 20 C.F.R. 404.1569, 416.969; SSR 83-12, 1983 WL 31253. If the ALJ is unclear as to the remaining occupational base given any additional limitations, then the ALJ must consult a vocational source. *Hensley v. Colvin*, Civ. No. 13-27810, 2015 WL 56626, at * 17 (S.D. W.Va. Feb. 10, 2015). This is precisely what the ALJ did here. The VE identified certain jobs that were classified as

6

light rather than sedentary, due to the need to lift or carry objects exceeding 10 pounds in weight, which could be performed in a manner consistent with the four hour stand / walk limitation. (R. 46-47) The VE further explained that this limitation is not addressed in the Dictionary of Occupational Titles ("DOT"). (R. 46) The ALJ was entitled to rely upon this testimony in finding that Debevits was capable of performing a "range" of light work and I am satisfied that his finding in this regard is supported by substantial evidence of record and is consistent with SSR 83-10 and the regulations.

(D) Conflict with Dictionary of Occupational Titles

Debevits contends that the VE's discussion of a "sit / stand" option created a conflict with the DOT which the ALJ failed to resolve. (ECF No. 14, p. 18) Notably, Debevits failed to identify the precise nature of that conflict. Certainly, an ALJ is required to ask, on the record, whether the VE's testimony is consistent with the DOT, elicit a reasonable explanation where an inconsistency exists, and explain in the decision how a conflict was resolved. *Zirsnak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014). Where the DOT is silent on an issue, however, a conflict does not exist. The DOT does not include sit / stand options in job descriptions. Consequently, no conflict exists. *See Sanborn v. Commr. of Soc. Sec.*, 2015 WL 3452872, at * 6, 613 Fed. Appx. 171 (3d Cir. June 1, 2015) (finding that the DOT's silence with regard to a sit / stand option does not place it in conflict with jobs identified by the VE); *Phillips v. Berryhill*, 2017 WL 2224831, at * 7 (E.D. Pa. May 22, 2017) ("The Third Circuit Court of Appeals has recognized that the DOT's silence with regard to the sit / stand option does not place it in conflict with jobs identified by a VE."); *Horn v. Colvin*, 2013 WL 1386836, at * 4 (W.D. Pa. Apr. 4, 2013)

7

and *Conn v. Astrue*, 852 F. Supp.2d 517, 528 (D. Del. 2012) ("the VE's testimony and the DOT are not in conflict; the DOT simply does not address sit / stand options.").

(E) Medical Opinion Evidence

Debevits takes issue with the ALJ's "downplaying and disregarding" of the findings tendered by his treating physician, Dr. Michael Kellis. For claims filed on or after March 27, 2017, the regulations governing the types of opinions considered and the approach to evaluation of opinions by ALJs were amended and the treating physician rule was eliminated. 20 C.F.R. §§404.1520c; 416.920c. Under the new broadened regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [a] medical source." *Id.* at §§404.1520c(a); 416.920c(a). For such claims, an ALJ now is required to articulate how persuasive he/she finds the medical opinions and prior administrative findings. *Id.* at §§404.1520c(b); 416.920c(b). In so doing, the ALJ shall consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors such as familiarity with other evidence in the claim or an understanding of disability policies and evidentiary requirements, as well as whether new evidence received after the opinion makes the opinion more or less persuasive. *Id.* at §§404.1520c(c); 416.920c(c). "The most important factors" are supportability[2] and consistency.[3] *Id.* at §§404.1520c(a); 416.920c(a). Therefore, the ALJ must explain how

---

[2] With regard to supportability, the regulations provides: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support her or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§404.1520c(c)(1); 416.920c(c)(1).
[3] With regard to consistency, the regulations provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources

8

he/she considered the supportability and consistency of an opinion but the ALJ is not required to discuss or explain how he/she considered the other factors. *Id.* at §§404.1520c(b)(2); 416.920c(b)(2). When opinions are equally supported and consistent with the record on the same issue but not exactly the same, however, the ALJ must explain how he/she considered the other factors. *Id.* at §§404.1520c(b)(3); 416.920c(b)(3). Additionally, when a medical source provides multiple opinions, an ALJ is not required to articulate how he/she considered each opinion but may consider it in one single analysis using the factors above. *Id.* at §§404.1520c(b)(1); 416.920c(b)(1). Moreover, an ALJ is not required to articulate how he/she considered evidence from nonmedical sources. *Id.* at §§404.1520c(d); 416.920c(d).

Simply stated, Debevits has not articulated how the ALJ failed to satisfy these new standards. After careful review, I find that the ALJ appropriately assessed Dr. Kellis' medical opinion in light of these standards. Specifically, the ALJ concluded that Dr. Kellis' opinion was not persuasive because the limitations he espoused were not consistent with or supported by other evidence of record. (R. 19) The treatment records, for instance, indicated a greater ability to walk, lift, and stand. (R. 19) Further, Dr. Kellis did not impose any functional limitations or lifting restrictions upon Debevits with respect to any loss of strength in the upper extremities. (R. 19) Additionally, both Dr. Das and Dr. Torello considered Dr. Kellis' Medical Source Statement and concluded that it "is without substantial support from the medical source who made it, which renders it less persuasive." (R. 61, 74) In short, I find that the ALJ complied with the new regulations

---

in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§404.1520c(c)(2); 416.920c(c)(2).

9

regarding the evaluation of medical opinion evidence and that his conclusions are supported by substantial evidence of record.

(F) Subjective Complaints of Pain

Finally, Debevits faults the ALJ for failing to give appropriate weight to his complaints of hand pain. An ALJ must follow a two-step process when assessing pain: first, he must determine whether there is a medical impairment that could reasonably be expected to produce the claimant's pain or other symptoms; and, second, he must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. Pain alone does not establish disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). Allegations of pain must be consistent with objective medical evidence and the ALJ must explain the reasons for rejecting non-medical testimony. *Burnett v. Comm'r. of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). In evaluating a claimant's statements regarding pain, the ALJ will consider evidence from treating, examining, and consulting physicians; observations from agency employees; and other factors such as the claimant's daily activities; descriptions of the pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment other than medication; and other measures used to relieve the pain. 20 C.F.R. §§ 404.1529, 416.929. I must defer to the ALJ's determinations unless they are not supported by substantial evidence. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 031, 95 S.Ct. 1133 (1975).

Here, the ALJ specifically stated that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (R. 14) Moreover, the ALJ followed he proper method in assessing Debevits' symptoms and pain. That is, he first determined whether there was an underlying medically determinable physical or mental impairment that could reasonably be expected to produce his pain or other symptoms, then the ALJ evaluated the intensity, persistence and limiting effects of those symptoms. (R. 14-21) The ALJ comprehensively detailed Debevits' medical history. He properly compared the medical evidence and other evidence of record, including activities of daily living, the intensity of pain, factors that precipitate and aggravate the symptoms, the effectiveness of medication, and treatment other than medication, and found them not to be entirely consistent. There can be no suggestion that he ignored or discounted Debevits' complaints of pain. Rather, given the conservative course of treatment regarding Debevits' hands, his statements that it is primarily his back and shoulder pain that prevent him from working, and his continued wide range of daily activities, the ALJ's findings are supported by substantial evidence of record.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC ANTHONY DEBEVITS )<br>    Plaintiff, )<br> )<br> -vs- )<br> )<br>ANDREW M. SAUL, )<br> )<br>    Defendant. ) | Civil Action No. 20-600 |

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 24th day of June, 2021, it is hereby ORDERED that the Motion for Summary Judgment (Docket No. 13) is DENIED and the Motion for Summary Judgment (Docket No. 15) is GRANTED. The Clerk of Courts shall mark this case "Closed" forthwith.

BY THE COURT:

_____
Donetta W. Ambrose
United States Senior District Judge